ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| EVELYN ÁLVAREZ MÁRTIR<br><br>Recurrida<br><br><br>v.<br><br><br>JUAN ANTONIO VÉLEZ SUÁREZ<br><br>Peticionario | TA2026CE00535 | *Certiorari*, procedente del Tribunal de Primera Instancia, Sala Municipal de Aguadilla<br><br>Caso Núm.: AG2025MU01806<br><br>Sobre: Art. 2.1 de la Ley 54-1989 |

Panel integrado por su presidenta, la Jueza Romero García, el Juez Monge Gómez y la Jueza Prats Palerm.

Prats Palerm, Jueza Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 20 de mayo de 2026.

Comparece Juan Antonio Vélez Suárez ("señor Vélez Suárez" o "Peticionario") mediante un recurso de *Certiorari*. Nos solicita que revisemos una *Orden de Protección* emitida el 31 de marzo de 2026, por el Tribunal de Primera Instancia, Sala Superior de Aguadilla ("TPI"), a favor de Evelyn Álvarez Mártir ("señora Álvarez Mártir" o "Recurrida"), en contra del señor Vélez Suárez, por un término de dos (2) meses.

Por los fundamentos que proceden, se *deniega* la expedición del auto de *certiorari* solicitado.

**I.**

El 13 de diciembre de 2025, la señora Álvarez Mártir presentó una *Petición de Orden de Protección* en contra de su excónyuge, el señor Vélez Suárez, al amparo de la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, conocida como la *Ley para la Prevención e Intervención con la Violencia Doméstica* ("Ley Núm. 54-1989"), 8 LPRA sec. 601 *et seq.* En igual fecha, el TPI concedió una *Orden de Protección Ex Parte*, vigente hasta el 10 de febrero de 2026.

Consecuentemente, el 15 de diciembre de 2025, el señor Vélez Suárez instó una *Moción en Solicitud de Remedios y Solicitar Fecha de Vista dentro del Término*

*dispuesto por Ley de 20 días.* Atinente a la controversia ante nos, señaló que, conforme a la Ley Núm. 54-1989, *supra,* la vista sobre la orden de protección final debía celebrarse dentro de los veinte (20) días desde que fue expedida la orden *ex parte.*

Ese mismo día, el peticionario notificó una *Moción en Solicitud de Regrabación de Vista 13 de diciembre de 2025 y para Informar Descubrimiento de Prueba,* la cual fue autorizada mediante *Orden* dictada el 19 de diciembre de 2025.

El 7 de enero de 2026, el señor Vélez Suárez radicó una *Urgente Moción en Solicitud para que se Adelante Fecha de Vista.* Reiteró que la vista señalada para el 10 de febrero de 2026 excedía el término de veinte (20) días dispuesto por Ley. No obstante, el 16 de enero de 2026, presentó una *Moción para Informar Varios Asuntos.* En lo aquí pertinente, expresó lo siguiente:

> 1. En el caso de epígrafe, conforme lo autorizado el 19 de diciembre de 2025, entrada [8], en el día de hoy le hicimos llegar Interrogatorio a la Sra. Evelyn Álvarez Mártir, a su correo electrónico.
>
> [...]
>
> 3. [...] [L]a Secretaría del Tribunal Superior de Aguadilla nos informaron que no se puede proveer la [regrabación], toda vez que no existe grabación de la vista celebrada el 13 de diciembre de 2025.
>
> 4. Respetuosamente **solicitamos se mantenga la vista pautada para el 10 de febrero de 2026**, y se deje sin efecto la solicitud presenta por el peticionado en la entrada número [10].[1]

(Énfasis y subrayado suplido)

El 21 de enero de 2026, notificada el día siguiente, el TPI emitió una *Orden* en virtud de la cual mantuvo en vigor el señalamiento para la vista del 10 de febrero de 2026.

Tras varias instancias, el 7 de febrero de 2026, notificada el 9 de febrero de 2026, el Hon. Rolando J. Matos Acevedo dictaminó una *Resolución* de inhibición. El 10 de febrero de 2026, el TPI notificó una *Orden de Protección Ex Parte Enmendada,* a los efectos de extender su vigencia, por un (1) mes adicional, hasta el 10 de marzo de 2026. Nuevamente, el 10 de marzo de 2026, el foro de

---

[1] SUMAC del TPI, Entrada Núm. 12.

instancia expidió una segunda *Orden de Protección Ex Parte,* a los fines de extender su vigencia hasta el 26 de marzo de 2026.

El 11 de marzo de 2026, el señor Vélez Suárez presentó una *Moción de Extrema Urgencia.* En virtud de la misma, entre otras, solicitó que la vista fuera recalendarizada para el 16 de marzo de 2026. Ante ello, el foro de instancia les solicitó a las partes que anunciaran tres fechas hábiles para la celebración de la Vista Final. En cumplimiento, el 13 de marzo de 2026, el peticionario radicó una *Urgente Moción en Cumplimiento de Orden,* en la cual indicó que tendrían disponibles el 19, 30 y 31 de marzo de 2026. Por consiguiente, el 16 de marzo de 2026, el foro de instancia pautó la Vista Final para el 31 de marzo de 2026 y, a esos efectos, extendió la vigencia de la *Orden de Protección Ex Parte.*

El 31 de marzo de 2026, se celebró la Vista Final en la cual comparecieron y testificaron ambas partes. En igual fecha, el TPI dictó una *Orden de Protección* final, por un término de dos (2) meses. Aquilatada la prueba testifical, consignó los siguientes hechos:

1. Las partes estuvieron casadas por 19 años y se divorciaron hace varios años, divorcio en el cual no dividieron bienes gananciales.

2. Procrearon dos hijos, ambos menores de edad actualmente.

3. Los alimentos de los menores se encuentran en cumplimiento.

4. Las partes mantienen pleito en Sala Superior sobre división de bienes; Caso; AG2024CV00498.

5. El 13 de diciembre de 2025 la parte peticionada se personó a propiedad en la cual es co titular.

6. En la propiedad se encontraban realizando labores empleados contratados por la Peticionaria.

7. Un empleado de la Peticionaria llamado (Pedro) llamó a la Peticionaria mediante video llamada para informarle situación con el Peticionado, la cual observó al Peticionado en la misma.

8. El Peticionado realizó expresiones como "Esto es mío, ella va a ver lo que le va a pasar".

9. La Peticionaria solicitó Orden de Protección y se le expidió Orden Ex Parte por el Tribunal.

10. El Peticionado solicitó Orden de Protección y fue citado el asunto.

11. Vigente la Orden el Peticionado realizó llamada a la Peticionaria, la cual se consultó con el Ministerio Público y no se autorizó la radicación de cargos criminales.[2]

A tenor con lo anterior, concluyó que el señor Vélez Suárez incurrió en manifestaciones de maltrato o negligencia física, verbal, emocional o psicológica, intimidación, amenazas, daño a sus bienes y abuso financiero o económico contra la señora Álvarez Mártir.

Inconforme, el 30 de abril de 2026, el señor Vélez Suárez acudió ante nos mediante recurso de *Certiorari* en el cual le imputó al foro de instancia la comisión de los siguientes errores:

> **Incurrió en error el Tribunal de Primera Instancia al consignar en la resolución judicial sobre orden de protección que el peticionado peticionario, señor Juan Vélez Suárez, incurrió en actos manifestativos de maltrato físico, verbal y psicológico, así como en amenazas a la propiedad y abuso financiero contra la peticionaria-recurrida, señora Evelyn Álvarez Mártir, cuando del récord, incluyendo las incidencias de la vista y el expediente del caso, no surge evidencia presentada u ofrecida que sustente tales imputaciones. La determinación carece, por tanto, de fundamento probatorio y constituye un error manifiesto en la apreciación de la prueba.**

> **Incurrió en error el Tribunal de Primera Instancia al considerar la expresión "ella va a ver lo que le va a pasar" escuchada a través de una comunicación telefónica con un tercero como un elemento probatorio para expedir una orden de protección. La determinación constituye un error manifiesto en la apreciación de prueba.**

> **Incurrió en error el Tribunal de Primera Instancia al considerar una llamada telefónica no constitutiva de delito como un elemento probatorio para expedir una orden de protección. La determinación constituye un error manifiesto en la apreciación de prueba.**

> **Incurrió en error el Tribunal de Primera Instancia al expedir una orden de protección en contra del señor Vélez Suárez al amparo de la Ley Número 54 de 1989, Ley para la Prevención en Intervención con la Violencia Doméstica.**

> **Incurrió en error el Tribunal de Primera Instancia al violar el debido proceso de ley al señalar la celebración de la vista final fuera del término estatutario de 20 días, en circunstancias no justificables, causando de esta manera perjuicios sustanciales al peticionado-peticionario, señor Vélez Suárez.**

El 1 de mayo de 2026, este Tribunal emitió una *Resolución* mediante la cual le ordenamos al TPI remitir la regrabación de la Vista Final y, a su vez, le

---

[2] Apéndice del recurso, Entrada Núm. 45, pág. 2.

otorgamos a la parte recurrida un término para presentar su alegato en oposición. En cumplimiento, el 4 de mayo de 2026, recibimos la regrabación de los procedimientos.

Ante una solicitud de la parte recurrida, el 18 de mayo de 2026, le concedimos una prórroga para presentar su oposición al recurso. Siendo así, el 19 de mayo de 2026, la señora Álvarez Mártir presentó su *Oposición a Petición de Certiorari.* Perfeccionado el recurso y contando con el beneficio de la regrabación de los procedimientos y la comparecencia de las partes, nos encontramos en posición de resolver.

**II.**

**-A-**

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. En esencia, se trata de un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *Rivera et als. v. Arcos Dorados,* 212 DPR 124 (2023); *800 Ponce de León Corp. v. American International Insurance*, 205 DPR 163 (2020); *Medina Nazario v. McNeil Healthcare, LLC*, 194 DPR 723, 728-729 (2016); véase, además, Art. 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491. Por tanto, la expedición del auto de *certiorari* descansa en la sana discreción del tribunal revisor. *Íd.; IG Builders et al v. BBVAPR*, 185 DPR 307, 337-338 (2012).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, delimita expresamente las instancias en las que este Tribunal de Apelaciones puede expedir los recursos de *certiorari* para revisar resoluciones y órdenes interlocutorias del foro de Instancia. *800 Ponce de León Corp. v. American International Insurance, supra; Scotiabank de Puerto Rico v. ZAF Corporation*, 202 DPR 478, 487 (2019). En lo pertinente, la referida regla dispone lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias

dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari, en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

32 LPRA Ap. V, R. 52.1.

Aun cuando al amparo del precitado estatuto adquirimos jurisdicción sobre un recurso de *certiorari*, la expedición del auto y la adjudicación en sus méritos es un asunto discrecional. No obstante, tal discreción no opera en el abstracto. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008). La Regla 40 del Reglamento del Tribunal de Apelaciones establece los criterios que este foro tomará en consideración para ejercer prudentemente su discreción para expedir o no un recurso de *certiorari*, a saber:

A.  Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.
B.  Si la situación de hechos planteada es la más indicada para analizar el problema.
C.  Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.
D.  Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.
E.  Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F.  Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G.  Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025).

De otra parte, este Tribunal solo intervendrá con las determinaciones discrecionales del Tribunal de Primera Instancia, cuando se demuestre que hubo un craso abuso de discreción, prejuicio, parcialidad o error manifiesto. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). En el ámbito jurídico la discreción ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *SLG Zapata-*

*Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013). La discreción se nutre de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia. *Íd.* Por lo anterior, un adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. *Umpierre Matos v. Juelle Albello,* 203 DPR 254, 275 (2019); *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).

**-B-**

La tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende, en gran medida, de la exposición del juzgador de los hechos a la prueba presentada, lo cual incluye, ver el comportamiento del testigo y escuchar su voz, mientras ofrece su testimonio. *Robert Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.,* 209 DPR 759, 778 (2022). De ahí que, los tribunales apelativos no debemos intervenir con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realizan los tribunales de instancia, salvo que se demuestre que el juzgador actuó movido por pasión, prejuicio o parcialidad o que incurrió en error manifiesto. *Íd.* Cuando la alegación es de pasión, prejuicio o parcialidad, el llamado a los foros apelativos es verificar, primordialmente, si el juzgador de los hechos cumplió con su función de adjudicar de manera imparcial. *Gómez Márquez et al. v. El Oriental Inc.*, 203 DPR 783, 793 (2020). Solo así podremos apoyar sus determinaciones de hechos. *Íd.*

Por otro lado, constituye error manifiesto cuando, de un análisis de la totalidad de la evidencia, el foro apelativo se convence de que se cometió un error, independientemente de que exista evidencia que sostenga las conclusiones de hecho del Tribunal. *Íd.* De manera que, la facultad de los foros apelativos para sustituir el criterio de los tribunales de instancia se limita a aquellos escenarios, en los cuales, de la prueba admitida no surge base suficiente que apoye su determinación. *Robert Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.,* supra. Como se sabe, las diferencias de criterio jurídico no alcanzan dicho estándar. *Íd.*

Ahora bien, cabe destacar que, en ausencia de evidencia oral, el Tribunal de Apelaciones carece de los elementos para descartar la apreciación razonada

y fundamentada de la prueba que realizó el Tribunal de Primera Instancia. *Hernández Maldonado v. Taco Maker,* 181 DPR 281, 289 (2011).

Como vemos, nuestro esquema probatorio está revestido de un manto de deferencia hacia las determinaciones de credibilidad que realizan los juzgadores de instancia, con respecto a la prueba testifical presentada ante sí. *Pueblo v. Arlequín Vélez,* 204 DPR 117, 146-147 (2020). Lo anterior, en reconocimiento a la oportunidad que tiene el foro primario de ver y observar a los testigos declarar, de poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones con el efecto de ir formando gradualmente, en su conciencia, la convicción sobre si dicen o no la verdad. *Íd.*, págs. 857-858.

### -C-

La política pública del Estado Libre Asociado de Puerto Rico repudia energéticamente la violencia doméstica por ser contraria a los valores de paz, dignidad y respeto. *Pueblo v. Figueroa Santana,* 154 DPR 717, 723 (2001); *San Vicente v. Policía de P.R.,* 142 DPR 1, 2 (1996). Así dispuesto, la Ley Núm. 54-1989, *supra,* fue adoptada con el propósito de establecer medidas con el fin de prevenir y disminuir la violencia doméstica. *Pizarro v. Nicot,* 151 DPR 944, 952 (2000). Para proteger a las víctimas, la Ley Núm. 54-1989, supra, expone que los jueces del TPI poseen la facultad para dictar medidas afirmativas por medio de la expedición de órdenes dirigidas al agresor. Exposición de Motivos de la Ley Núm. 54-1989, *supra.* Nuestro máximo foro ha expresado que "como integrantes de la Rama Judicial, estamos comprometidos a contribuir a erradicar de nuestra sociedad este grave problema". *In re Santiago Concepción,* 189 DPR 378, 406 (2013).

Una orden de protección es "todo mandato expedido por escrito bajo el sello de un tribunal, en la cual se dictan las medidas a un agresor para que se abstenga de incurrir o llevar a cabo determinados actos o conducta constitutivos de violencia doméstica". Art. 1.3 (i) de la Ley Núm. 54-1989, 8 LPRA sec. 602. En ese sentido, la violencia doméstica se define como:

> [E]l empleo de fuerza física o violencia psicológica, intimidación o persecución o violencia económica contra una persona por parte de su cónyuge, excónyuge, una persona con quien cohabita o haya

cohabitado, con quien sostiene o haya sostenido una relación consensual o una persona con quien se haya procreado una hija o un hijo, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación, para causarle daño físico a su persona, sus bienes o a la persona de otro o al animal de compañía o mascota de la víctima, de los hijos o del victimario para causarle grave daño emocional.

Art. 1.3 (v) de la Ley Núm. 54-1989, *supra*.

El Art. 2.1 de la Ley Núm. 54-1989, 8 LPRA sec. 621, establece que, cualquier persona, mayor de dieciocho (18) años, que haya sido víctima de violencia doméstica o de conducta constitutiva de delito, puede radicar una petición en el tribunal y solicitar una orden de protección, sin que sea necesaria la radicación previa de una denuncia o acusación. Si el tribunal determina, entre otras, que "existe una probabilidad sustancial de riesgo inmediato de maltrato" o que "existe la probabilidad de que dar notificación previa a la parte peticionada provocará el daño irreparable que se intenta prevenir", podrá emitir una orden de protección *ex parte*, con carácter provisional. Art. 2.5 de la Ley Núm. 54-1989, 8 LPRA sec. 625. En esos casos, el tribunal "**señalará una vista a celebrarse dentro de los próximos veinte (20) días**, de haberse expedido dicha orden *ex parte*, **salvo que la parte peticionada solicite prórroga a tal efecto**". (Énfasis suplido). *Íd*. Durante esta vista, el tribunal podrá dejar sin efecto la orden *ex parte* o extender su vigencia por el tiempo que estime necesario. *Íd*.

### III.

En el recurso que nos ocupa, la parte peticionaria sostiene que el TPI incidió al expedir una *Orden de Protección* final en su contra, al amparo de la Ley Núm. 54-1989, *supra*. Arguye que la misma fue emitida sin prueba constitutiva de maltrato físico, verbal o psicológico, amenazas a la propiedad o abuso financiero. Esboza, además, que el foro de instancia erró al tomar en consideración una llamada telefónica sostenida entre la recurrida y un tercero, en el fondo de la cual se escuchó al peticionario expresar "ella va a ver lo que le va a pasar". Por otra parte, alega que se le violentó su debido proceso de ley, al señalar la celebración de la Vista Final fuera del término de veinte (20) días dispuesto por Ley.

Tras un examen cuidadoso de la regrabación de la Vista Final, constatamos que, las partes están pasando por un proceso de liquidación de bienes gananciales. Dentro de ese proceso, se encuentra una propiedad localizada en el Poblado San Antonio en Aguadilla. El 13 de diciembre de 2025, el señor Vélez Suárez fue a la oficina del correo postal, la cual ubica al lado del inmueble ganancial. Allí, se percató de que dos (2) hombres se encontraban realizando unas reparaciones, a pesar de que, en el caso sobre liquidación de bienes, el 10 de diciembre de 2025, el TPI había emitido una orden prohibiéndole a ambas partes realizar cualquier acción relacionada al inmueble.

La reparación fue gestionada por la señora Álvarez Mártir, quien desconocía sobre la orden emitida tres (3) días antes. Ante esta situación, el señor Vélez Suárez se acercó a los trabajadores a indagar sobre las labores. Consecuentemente, uno de ellos llamó por videollamada a la señora Álvarez Mártir, a través de la aplicación *WhatsApp*. Durante la llamada, la señora Álvarez Mártir escuchó al señor Vélez Suárez manifestar "esto es mío, se me largan", así como "ella va a ver lo que le va a pasar". Al escuchar dichas expresiones, la señora Álvarez Mártir afirmó que sintió terror y pánico porque pensó que el señor Vélez Suárez la iba a matar. Como resultado, la señora Álvarez Mártir solicitó una *Orden de Protección Ex Parte*, la cual fue concedida inmediatamente.

Estando vigente la orden, el señor Vélez Suárez realizó una llamada telefónica a la señora Álvarez Mártir, la cual no fue contestada. El señor Vélez Suárez expresó que la llamada fue un accidente e inmediatamente se comunicó con sus abogados para explicar lo sucedido. El Ministerio Público optó por no presentar cargos en contra del señor Vélez Suárez.

Conforme a lo anterior, el TPI entendió prudente emitir una *Orden de Protección* por el término de dos (2) meses. Ello, en atención a que los tribunales tienen el deber de expedir aquellas medidas preventivas necesarias para evitar la violencia doméstica en todas sus vertientes.

Por otro lado, surge del expediente que el señor Vélez Suárez solicitó que la Vista Final fuera celebrada, originalmente, el 10 de febrero de 2026, en exceso

del término de veinte (20) días. Asimismo, destacamos que la Vista Final fue celebrada, finalmente, el 31 de marzo de 2026, por un acuerdo entre las partes.

Así dispuesto y examinado cuidadosamente el expediente, a la luz de los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, *supra*, no identificamos razón por la cual esta Curia deba intervenir. Ello, ya que no se presentan ninguna de las situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios o postsentencia en los que el foro de primera instancia haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. En el recurso que aquí atendemos no se nos ha demostrado la existencia de alguno de estos escenarios.

**IV.**

Por los fundamentos que anteceden, se *deniega* la expedición del auto de *certiorari* solicitado.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones